## *Ex Parte* SAMUEL STEVENS.

Subsequently to the enactment of *St.* 1832, *c.* 73, an information was filed in t.e Mu nicipal Court, praying that additional punishment might be awarded against a con· vict in the State prison, and setting forth first, a sentence to hard labor for a term of years and his discharge in 1824, secondly, a sentence to solitary imprisonment for three days and to hard labor for one year, and his discharge in 1828, and third· ly, a sentence to hard labor for a term of years, upon which he was still detained ; and thereupon he was sentenced to additional punishment by solitary imprisonmen' for one day and confinement to hard labor for seven years. It was *held,* that th*a*s additional sentence could not be sustained under *St.* 1827, *c.* 118, § 19, 20, as a sentence upon a third conviction, but that it might be sustained under that statute as a sentence upon a second conviction.

SHAW C. J. delivered the opinion of the Court. This case comes before the Court on a writ of certiorari, and the object is to submit to the Court the validity of a judgment of the Municipal Court at the November term 1832, whereby on an information filed by the attorney for the commonwealth, the prisoner Stevens was sentenced to an additional punishment, by confinement to hard labor for the term of seven years.

It appears by the record, that at the Municipal Court, December term 1820, the prisoner was indicted and convicted of three distinct larcenies at the same term ; and was thereupon sentenced as a common and notorious thief, pursuant to the statute, to confinement at hard labor for the term of four years, and was discharged in 1824 ; — that by the name of Samuel Malone he was convicted before the Supreme Judi cial Court, at Cambridge, October term 1825, for larceny in stealing a horse of the value of $ 100, without aggravation, upon which he was sentenced to three days solitary imprisonment, and confinement to hard labor in the State prison for one year, and was discharged in 1828 ; — and that at the Supreme Judicial Court, at Cambridge, October term 1829, he was convicted of an aggravated larceny, in stealing property from a shop, for which he was sentenced to three years hard labor in the State prison.

It was decided by the Court in *White's case*, at the present term, (*ante*, *p.* 90,) that a conviction and sentence, by which one is sentenced as a common and notorious thief,

under the statute of 1804, *c.* 143, is being sentenced to punishment by confinement to hard labor for a term of years, within the meaning of the statute of 1827, *c.* 118, § 19, 20. It is very clear that the conviction at Cambridge in 1829, of larceny in a shop, was the conviction of a crime the punishment of which was, by law, confinement to hard labor for a term of years. Both these therefore are within the prov'sions of the statute of 1827.

But upon the second conviction, being for a simple larceny without aggravation, the term of confinement to hard labor for which it was punishable, and the period to which the prisoner was actually sentenced, not exceeding one year, according to the decision in *Seymour's case*, (*ante, p.* 40,) it was not a punishment by confinement, for a term of years. The consequence is therefore, that according to the construction put upon these statutes, this prisoner was not liable to be sentenced as upon a third conviction, under the statute of 1827, and had the sentence been confinement to the State prison for life, the judgment would have been erroneous.

But the additional sentence in fact awarded upon this information was one day solitary imprisonment, and confinement to hard labor for seven years in the State prison. And by the statute of 1827, *c.* 118, § 19, a person convicted a second time, who has been once before sentenced for a term of years, is liable to an additional punishment, of thirty days solitary imprisonment, and seven years hard labor. The punishment therefore was such as the Court had authority to award against the prisoner as upon a second conviction; and without regard to the second conviction, as enumerated in the information, the first and third being sufficient, the prisoner was liable to the sentence actually awarded, as upon a second conviction. These judgments and convictions are entirely separate and distinct, and the insufficiency of one does ˙not in any respect depend upon that of another. If, therefore, there is enough on the record to warrant the judgment, it ought to be sustained.

This reasoning would appear to be entirely sound, and the conclusion to which it leads satisfactory, were it not affected by the operation of *St.* 1832, *c.* 73, passed some months he-

fore this judgment was rendered, and which, it is contended, had the legal effect and operation, though perhaps it may not have been so intended by the legislature, to prohibit and put an end to all additional punishments upon second convictions and in effect to repeal that part of *St.* 1827, *c.* 118, which provides for such additional punishments upon second convictions. The act relied on provides, that after its passage, no convict shall be sentenced to confinement, by force of the provisions alluded to in the statute of 1827, unless such convict has at two several times before been sentenced to confinement in the State prison, for a period, at each time, of more than one year, and has been twice discharged therefrom in due course of law.

The most obvious intent and purpose of this statute was to alter and vary the law and make it more explicit in the particular in which it had been before judicially held, (*Commonwealth* v. *Phillips*, 11 Pick. 28,) that two convictions at one and the same term, were two convictions within the, statute, as it stood ; and this statute intended expressly to provide, that to render a convict liable to confinement for life, he should have been at two different times sentenced and committed pursuant to his sentence, so as to be, in the popular language of the prison, a third comer.

But it is contended, that although this was the primary intent of the statute, yet that its language is clear and explicit, and broad enough in its terms, to include all cases where the convict has not been *twice* before sentenced for a term of years. But we are of opinion that this is not the necessary or true construction.

That the legislature, by this statute, intended to alter the law in some respects, is quite manifest, but the nature and extent of such alteration must be learned from its language.

In the first place, it is quite clear that the statute of 1827 is not repealed by this act, and this act only directs the manner in which, in certain respects, it shall be construed and carried into effect. To the extent of this restraint and modification, the former statute is repealed and no further. The liability to the additional punishments, still stands upon the statute of 1827. To what extent then does this act restrain its operation ?

The act in question,* obviously alters the provisions of the former law, in two respects ; first, by the words " more than one year," instead of " a term of years," and secondly, by referring to confinement generally, instead of confinement to nard labor. When therefore the solitary imprisonment and the confinement to hard labor together, both of which come under the general denomination of confinement, amount to more than one year, the case is within this statute, though it would not be within the statute prescribing confinement to nard labor for a term of years.

How then stands the prisoner's case. By the statute of 1827 he was liable to be sentenced as upon a second conviction, having before been once sentenced for a term of years, unless the power is restrained and taken away by the operation of this statute. But his case is precisely within the exception of this statute, which is this, " unless he has at two several times before been sentenced by competent authority to confinement in the State prison, for a period, at each time, more than one year." That his case is precisely within this exception, will be manifest from a recurrence to the facts. In regard to the first there can be no doubt ; he was sentenced to upwards of four years confinement and dis charged. In the second case, though not sentenced for a term of years, yet he was sentenced by competent authority to confinement in the State prison, for more than one year, to wit, one year and three days, and was discharged therefrom. We are therefore all satisfied that this statute did not restrain or prevent the operation of the statute of 1827, upon the circum stances of the prisoner's case, and that the sentence was right, under the former statute, as upon a second conviction, or in other words, as against a second comer to the State prison.

It is very possible, that the second of the convictions and sentences set forth in the information, was considered by the Municipal Court as a sentence for a term of years, under a different construction of the statutes, from that which we have

---

* This act is now repealed by *St.* 1833, *c.* 85, which re-enacts the provision by which second comers are liable, and substitutes confinement to hard labor, for a period not less than one year, for hard labor for a term of years.

felt constrained to adopt, and that the conviction upon the information was regarded as a punishment awarded as upon a third conviction, and the mitigated penalty of confinement for seven years, instead of life, awarded in pursuance of the 2d section of the statute of 1832, *c.* 73, which allows the court a latitude in this respect, upon third conviction. But if this were more clear than it is, we think it would make no difference. The question for this Court is, whether the judgment was correct or not, and that must be decided by the record. Whether that court came to the conclusion which it did, through the same views of the law and the same course of reasoning which have guided us, or not, can make no difference, when the conclusion is the same. The result is, that the judgment of the Municipal Court is affirmed.

*Leland* for the prisoner.

*Austin*, Attorney-General, for the commonwealth.